UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID PICKELHAUPT,

    Plaintiff,      CIVIL ACTION NO. 05-74660

  v.          DISTRICT JUDGE ARTHUR J. TARNOW

ANDREW JACKSON, RAYMOND  MAGISTRATE JUDGE VIRGINIA M. MORGAN
BOOKER, JOHN DOE, JANE DOE,
MS. ROBY, BANKS, MS. MALONE,
JOHN JEFFRIES,[1]

    Defendants.
_____/


## REPORT AND RECOMMENDATION


### I. Introduction

   This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, an inmate in the custody of

the Michigan Department of Corrections (MDOC), alleges that the defendants[2] deprived plaintiff

of his right to procedural due process under the Fourteenth Amendment to the United States

Constitution.  Plaintiff also makes a state law claim on the basis of promissory estoppel.  The

_____

   [1]On August 9, 2007, the parties stipulated to the substitution of John Jeffries for
defendants John Doe and Jane Doe (D/E #46).  On December 12, 2007, the parties stipulated to
the dismissal of defendants Malone and Jeffries without prejudice (D/E #49).

   [2]The remaining defendants are or were Mound Correctional Facility (NRF) employees
Andrew Jackson (Warden), Raymond Booker (Warden), Ms. Roby (Classification Director), and
Banks (Supervisor of the Classification Director).  (Amended Complaint, ¶¶ 6-11)

matter comes before the court on Defendants' Motion for Summary Judgment (D/E #50).  For

the reasons discussed below, this Court recommends that defendants' motion be **GRANTED.**

All remaining defendants are entitled to summary judgment and qualified immunity on

plaintiff's 42 U.S.C. § 1983 claim because no genuine issue exists with respect to whether a

constitutional violation occurred.  Jackson and Booker are also entitled to summary judgment

because they were not personally involved in the alleged constitutional violation.  Additionally,

given that plaintiff's sole federal claim should be dismissed[3], this Court recommends that

plaintiff's state law claim be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

## II. Background

On December 8, 2005, plaintiff filed a complaint against Jackson pursuant to 42 U.S.C. §

1983 (D/E #1).  In that complaint, plaintiff alleged that his pay rate for his prison job was

arbitrarily reduced from $ 3.34 per hour to $ 1.77 per hour and that such reduction constituted a

violation of his Fourteenth Amendment right to procedural due process.

---

[3]Plaintiff briefly notes that defendants address the claims against them in their individual
capacities (Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment, pp. 9-
10), while plaintiff brought this action against defendants in both their individual and official
capacities (D/E #31).  "[O]fficial-capacity suits generally represent only another way of pleading
an action against an entity of which an officer is an agent." Hafer v. Melo, 502 U.S. 21, 25, 112
S.Ct. 358, 116 L.Ed.2d 301 (1991).  "Suits against state officials in their official capacity
therefore should be treated as suits against the State," and therefore, "the entity's 'policy or
custom' must have played a part in the violation of federal law."  Hafer, 502 U.S. at 25.
Moreover, it is well established that "[d]amages actions against public officials require a careful
adherence to the distinction between personal and official-capacity suits." Gean v. Hattaway,
330 F.3d 758, 765 (6th Cir. 2003) (edits omitted) quoting Kentucky v. Graham, 473 U.S. 159,
165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).  In this case, plaintiff never alleges or alludes to
any policy or custom.  Thus, while he purports to allege a claim against defendants in their
official capacities, there are simply no such claims found in the amended complaint.

On June 15, 2006, Jackson filed a motion to dismiss (D/E #12). In that motion, Jackson sought dismissal of plaintiff's complaint on the ground that plaintiff failed to exhaust his administrative remedies prior to filing suit, as required under 42 U.S.C. § 1997e(a).

On July 26, 2006, Magistrate Judge Virginia M. Morgan recommended that Jackson's motion to dismiss be denied (D/E #15). In that Report and Recommendation, Magistrate Judge Morgan found:

> a review of the pleadings indicates that this is, in essence, an action against the facility itself and that Jackson has been sued in his official capacity as the Warden of that facility. Given the fact that plaintiff fully notified officials at the Mound facility of his complaint regarding his reduction in pay, the purpose of the exhaustion requirement has been satisfied. The court concludes, based on these circumstances, that plaintiff has exhausted his administrative remedies. [D/E #15, p. 5]

Magistrate Judge Morgan also recommended, in the alternative, that plaintiff be permitted to amend his complaint to name the "Classification Director" who reduced his pay as the defendant in this matter. (D/E #15, p. 5)

On December 4, 2006, United States District Court Judge Arthur J. Tarnow issued an order adopting Magistrate Judge Morgan's Report and Recommendation (D/E #19). Additionally, Judge Tarnow ordered that:

> that Plaintiff, presently proceeding *in propria persona* in this matter, would greatly benefit from the assistance of counsel. Thus, this Court shall seek counsel to be appointed to assist in presenting Plaintiff's claims. Once *pro bono* counsel has been appointed, Plaintiff's attorney will be permitted to file an amended complaint within a reasonable amount of time. [D/E #19, p. 1]

**A. Amended Complaint**

On May 25, 2005, plaintiff filed an amended complaint against defendants (D/E #31).  In that amended complaint, plaintiff alleges that on or about May 15, 1997, plaintiff was incarcerated at the Mound Correctional Facility ("NRF").  (Amended Complaint. ¶ 12)  Soon after his incarceration began, plaintiff, who possesses a State Certified Mechanics License and a Certificate of Completion in Auto Mechanics from St. Clair Community College, started working in NRF's maintenance department.  (Amended Complaint, ¶¶ 13-14)  "Based on [plaintiff's extensive training in mechanics, which in April 2001 was over one-thousand hours, his Michigan Mechanic's license, and the fact that [plaintiff] was constantly working in hazardous situations, Ms. Roby and Mr. Baker agreed that pursuant to Michigan Department of Corrections Policy, [plaintiff] was entitled to a wage of $3.34 per day."  (Amended Complaint, ¶ 16)  In exchange for the promise to pay $3.34 with overtime, plaintiff declined hazard pay even though he was eligible for it.  (Amended Complaint, ¶ 17)

"On June 6, 2005, after being paid $3.34 per day for four years, plaintiff was informed that effective May 1, 2005, his pay would be reduced from $3.34 per day to $1.77 per day."  (Amended Complaint, ¶ 19)  Plaintiff was did not receive "any type of hearing before or after his pay was arbitrarily reduced."  (Amended Complaint, ¶ 21)  Plaintiff attempted to resolve his issue with his supervisors, who in turn spoke with Malone and Banks, but the issue was not resolved.  (Amended Complaint, ¶¶ 22-23)  Plaintiff filed grievance, which was rejected at Step I of the grievance process by Malone.  (Amended Complaint, ¶¶ 23-24)  Plaintiff then appealed his grievance to Step II, where it was denied by Jackson.  (Amended Complaint, ¶¶ 25-

26)  Plaintiff then appealed his grievance to Step III, where it was also denied.  (Amended Complaint, ¶¶ 27-28)

On the basis of the above allegations, plaintiff makes two claims in his amended complaint.  First, plaintiff makes a procedural due process claim pursuant to 42 U.S.C. § 1983.  Specifically, plaintiff alleges that his "prison wages were arbitrarily reduced without due process of law in violation of the Fourteenth Amendment of the United States Constitution."  (Amended Complaint, ¶¶ 31-34)  Second, plaintiff makes a promissory estoppel claim.  Specifically, plaintiff alleges that, to avoid injustice, this court must specifically enforce defendants' promise to plaintiff regarding his wages because, at the time of making the promise and inducing action on plaintiff's part, defendants could reasonably foresee that failure to perform the promise would cause plaintiff to suffer damages.  (Amended Complaint, ¶¶ 35-46)

### B. Pending Motion for Summary Judgment

On January 23, 2008, defendants filed a motion for summary judgment (D/E #50).  In that motion, defendants argue that they are entitled to qualified immunity because plaintiff cannot maintain a procedural due process claim against defendants given that plaintiff does not have liberty or property interest in the pay rate for his prison job.  Additionally, defendants note that, even if this Court does determine that plaintiff had a property interest in being paid at a particular rate, plaintiff received the process he was due when Malone allowed him to argue his case to her before the reduction went in to effect and through plaintiff's opportunity to use the grievance process to change her decision.  Defendants also argue that, assuming plaintiff's § 1983 claim is dismissed, the court should decline to exercise supplemental jurisdiction over

plaintiff's promissory estoppel claim.  Defendants further argue that plaintiff cannot prevail on his promissory estoppel claim because the State cannot be bound by an implied contract entered in to by a state officer where that officer had no authority to enter an express contract. Defendants also argue that Jackson, Booker and Banks are entitled to summary judgment because they were not personally involved in the decision to reduce plaintiff's pay.  Lastly, defendants argue that Booker is entitled to summary judgment because plaintiff failed to exhaust his administrative remedies against Booker.

On February 22, 2008, plaintiff filed a response to defendants' motion for summary judgment (D/E #52).  In that response, plaintiff argues that, given that Magistrate Judge Morgan previously recommended rejecting defendants' argument that plaintiff's complaint should be dismissed for failing to exhaust his administrative remedies (D/E #15) and United States District Court Judge Tarnow adopted that recommendation (D/E #19), the law of the case doctrine compels denial of Booker's failure to exhaust argument.  Plaintiff also argues that, contrary to defendants' assertions, plaintiff had a liberty and/or property interest in his job once he was assigned to it.  Plaintiff bases his argument on the MDOC Manual and he also argues that, once he had a property or liberty interest in his job, he also had a property right to the wages for the work he performed.  Plaintiff further argues that he did not receive the process he was due given the facts of this case, as demonstrated by  plaintiff's evidence.  Plaintiff also argues that his claims against Booker, Jackson and Banks were not based on a theory of respondeat superior and he has made claims against all three individuals based on their direct role in violating his Due Process Rights.

With respect to plaintiff's state law claim, plaintiff requests that the Court continue to exercise supplemental jurisdiction over his state law claim, even if his federal claim is dismissed, in order to foster judicial economy, prevent duplicative litigation in state court and because in essence both claims arise from the same nucleus of operative fact. Plaintiff also argues that Roby, as Classification Director, had the authority to bind the state to pay plaintiff a particular wage and therefore plaintiff's claim for promissory estoppel can be maintained.

On February 26, 2008, defendants filed a reply to plaintiff's response to their motion for summary judgment (D/E #53). In that reply, defendants argue that the Sixth Circuit has held that the Constitution does not create a property or liberty interest in prison employment, and no such interest created by state law either. Defendants also reiterated that Roby had no statutory or constitutional authority to bind the State to pay plaintiff $3.34 per day. Defendants further argued that Booker, Jackson, and Banks had no personal involvement in this case. Jackson's only involvement in this case was to respond to a Step II grievance and the Sixth Circuit has held that an inadequate response to a grievance does not constitute sufficient involvement to establish liability for a constitutional violation. Booker did not even become the Warden at NRF until 2006 so there is no way that he played any role in plaintiff's pay being reduced. Banks' only role was to verify that plaintiff did have a Motor Vehicle Mechanic Certificate from the State of Michigan and that he had earned credits at St. Clair Community College. Moreover, she testified that she had no control over plaintiff's wages. Lastly, Booker argues that, because he was not a party to the original complaint, he did not have an opportunity to argue that plaintiff failed to

exhaust his administrative remedies and, consequently, the law of the case doctrine does not apply to him on this issue.

## III. Standard of Review

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).

"Where the record taken as a whole could not lead a rational trier of <u>fact</u> to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. 1348 (<u>quoting</u> <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

## IV. Discussion

### A. Qualified Immunity

Defendants argue they are entitled to summary judgment on the grounds of qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." <u>Saucier v. Katz</u>, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272 (2001), quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is an immunity from suit and not a mere defense to liability. <u>Saucier</u>, 533 U.S. at 200. As a result, courts have "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

A court required to rule upon the qualified immunity issue must first consider whether the facts alleged show the officer's conduct violated a constitutional right. <u>Saucier</u>, 533 U.S. at 201. If a violation could be shown, the court must then ask whether that constitutional right was clearly established. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." <u>Saucier</u>, 533 U.S. at 201.

**1. Constitutional Violation**

In this case, defendants first argue that they are entitled to qualified immunity because no constitutional violation occurred. As noted above, plaintiff alleges that his constitutional right to procedural due process was violated. The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law. "[T]hose who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005). Accordingly, a procedural due process analysis addresses two questions. "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citations omitted). Put another way, to state a procedural due process claim under § 1983, a plaintiff must demonstrate that he possessed a protected liberty or property interest, and that he was deprived of that interest without due process. See Hahn v. Star Bank, 190 F.3d 708, 716 (6th Cir. 1999), cert. denied, __ U.S. __, 120 S.Ct. 1423 (2000).

**a. Liberty Interest**

A liberty interest may arise from two distinct sources-from the implicit guarantees of the Due Process Clause itself, or as a result of state action. Bazzetta v. McGinnis, 430 F.3d 795, 803 (6th Cir. 2005). With regard to the Due Process Clause itself, protected liberty interests are created if corrections officials impose restraints upon the prisoner which "exceed [the prisoner's] sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of

its own force." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

See also Bazzetta, 430 F.3d at 803-804.  With regard to state action, a liberty interest arises

where the state's regulations impose  restraints "which, while not exceeding the sentence in such

an unexpected manner as to give rise to protection by the Due Process Clause of its own force,

nonetheless impose[ ][an] atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life." Sandin, 515 U.S. at 484.  See also Bazzetta, 430 F.3d at 803.

In evaluating a claimed liberty interest by prison inmates, courts are mindful that

imprisonment necessarily "carries with it the circumscription or loss of many significant rights."

Hudson v. Palmer, 468 U.S. 517, 524, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).  The "curtailment

of certain rights is necessary, as a practical matter, to accommodate a myriad of 'institutional

needs and objectives' of prison facilities, chief among which is internal security." Hudson, 468

U.S. at 524 (internal citations omitted).  Accordingly, not every "action taken for a punitive

reason encroaches upon a liberty interest under the Due Process Clause." Sandin, 515 U.S. at

484.

In this case, while plaintiff briefly alludes to possessing a liberty interest in his job and,

therefore, his wages as well, he fails to argue this point.  To the extent plaintiff even makes that

argument, it is without merit.  With regard to the Due Process Clause itself, nothing suggests that

defendants created a protected liberty interest by imposing any restraints upon plaintiff which

"exceed [the plaintiff's] sentence in such an unexpected manner as to give rise to protection by

the Due Process Clause of its own force." Sandin, 515 U.S. at 484.  Moreover, as expressly

found by the Sixth Circuit in an unpublished case, a prisoner has no constitutionally protected

right to either a prison job or a particular prison wage.  <u>Izard v. Blair</u>, No. 97-6098, 1999 WL

96747, 2 (6th Cir. February 3, 1999), citing <u>Bulger v. United States Bureau of Prisons</u>, 65 F.3d

48, 49 (5th Cir.1995); <u>Salahuddin v. Coughlin</u>, 674 F.Supp. 1048, 1054 (S.D.N.Y.1987).  Nor

does this case involve any state actions imposing atypical and significant hardships in relation to

the ordinary incidents of prison life that would create a liberty interest on the basis of state

action.  Plaintiff merely had his rate of pay reduced and no liberty interest was implicated by

state action or the Due Process Clause itself.

###   b. Property Interest

"The Fourteenth Amendment's procedural protection of property is a safeguard of the

security of interests that a person has already acquired in specific benefits.  These

interests-property interests-may take many forms."  <u>Board of Regents of State Colleges v. Roth</u>,

408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972).  "Property interests do not

derive from the Constitution, but "[r]ather, they are created and their dimensions are defined by

existing rules or understandings that stem from an independent source such as state law-rules or

understandings that secure certain benefits and that support claims of entitlement to those

benefits."  <u>Brock v. McWherter</u>, 94 F.3d 242, 244-245 (6th Cir. 1996) quoting <u>Roth</u>, 408 U.S. at

577, 92 S.Ct. at 2709.  <u>See</u> <u>also</u> <u>Sickles v. Campbell County, Kentucky</u>, 501 F.3d 726, 733 (6th

Cir. 2007); <u>Silberstein v. City of Dayton</u>, 440 F.3d 306, 311 (6th Cir. 2006).

To constitute a constitutionally protected property right, "the interest must rise to more

than 'an abstract need or desire,' ... and must be based on more than 'a unilateral hope'...."

<u>Newsom v. Norris</u>, 888 F.2d 371, 374-375(6th Cir. 1989), quoting <u>Kentucky Dep't of</u>

Corrections v. Thompson, 490 U.S. at 460 (citations omitted).  A cognizable property interest arises when the plaintiff has "a legitimate claim of entitlement to a particular benefit."  Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 539 (6th Cir. 2002) quoting Roth, 408 U.S. at 577, 92 S.Ct. 2701.  Any property interest must be created by state law by language of an unmistakably mandatory character.  Newsom, 888 F.2d at 374 (collecting cases).

In this case, plaintiff does not have a cognizable property interest in the amount he was paid.  A property interest may be created by state law or prison officials' policy statements.  Brock, 94 F.3d at 244-245; Newsom, 888 F.2d at 374.  However, plaintiff fails to point to any state law or MDOC regulation creating such an interest in prison wages, despite the fact that he provides both an MDOC policy directive and a MDOC Operating Procedure relating to prisoner work.  (Plaintiff's Response to Defendants' Motion for Summary Judgment, Exhibits C and H)  Plaintiff most likely does not point to his exhibits because, as he admits, "under the policy, [plaintiff] does not meet the criteria for the $3.34 a day pay rate."  (Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment, p. 4)

Instead, plaintiff argues that, while he  may not have been entitled to have a job at all, once he was assigned one, he acquired a property interest in that position pursuant to the MDOC Manual and "[i]t follows, a fortiori, that if he had a property or liberty interest in his job, he also had a property right to the wages for the work he performed."  (Plaintiff's Brief in Response to Defendants' Motion for Summary Judgment, p. 7)  Specifically, plaintiff relies on a MDOC Manual provision stating: The program classification process administers and reclassifies school/work assignments through file review and prisoner interviews. The process includes a

reporting system for documentation of progress toward established goals and a method for termination within the guidelines of due process." (MDOC Operating Procedure, Program Classification, p. 1, attached as Exhibit H to Plaintiff's Response to Defendants' Motion for Summary Judgment)  However, plaintiff fails to provide any support for that argument and, even assuming *arguendo* that plaintiff was entitled to due process prior to be terminated from his work position, a policy statement regarding termination of prison employment fails to create a property interest in a certain wage rate "by language of an unmistakably mandatory character." Newsom, 888 F.2d at 374.

Plaintiff also argues that he and Roby, the former Classification Director, had a "mutually explicit understanding" regarding plaintiff's rate of pay and that understanding created a property interest.  As noted above, a plaintiff can prove an property interest under state law by demonstrating that there was a "mutually explicit understanding" between himself and the government.  Newsom, 888 F.2d at 374.  In this case, plaintiff bases his procedural due process claim on the allegation that Roby accepted the pay rate on the State's behalf.  "As at common law, the validity of Michigan contracts depends not only on the required elements of offer, acceptance, and consideration, but also on the competency of the parties to enter into a contract." Michigan Paytel Joint Venture, 287 F.3d at 539-540.  "Public officers have and can exercise only such powers as are conferred on them by law, and a State is not bound by contracts made in its behalf by its officers or agents without previous authority conferred by statute or the Constitution."  Sittler v. Bd of Control, 333 Mich. 681, 687 (1952).  "Nor is a State bound by an implied contract made by a State officer where such officer had no authority to make an express

-14-

one." <u>Sittler</u>, 333 Mich. at 687. Moreover, "[t]he powers of State officers being fixed by law, all persons dealing with such officers are charged with knowledge of the extent of their authority or power to bind the State, and are bound, at their peril, to ascertain whether the contemplated contract is within the power conferred." <u>Sittler</u>, 333 Mich. at 687.

In this case, plaintiff argues that Roby had the authority to enter into an agreement granting plaintiff a certain wage rate in exchange for plaintiff forgoing hazard pay, but he fails to provide any support for that position. Such authority is not found in the duties given to Classification Directors in the MDOC Operating Procedure attached to plaintiff's response ((MDOC Operating Procedure, Program Classification, p. 4, attached as Exhibit H to Plaintiff's Response to Defendants' Motion for Summary Judgment) Roby appears to have no statutory or constitutional authority to bind the State to pay plaintiff a certain wage and, pursuant to <u>Sittler</u>, plaintiff is charged with the knowledge that Roby could not enter into any contract for the State. <u>Sittler</u>, 333 Mich. at 687. Given Roby's lack of authority and plaintiff's assumed knowledge of that lack of authority, plaintiff's property interest in his prior wage rate fails to rise above an abstract need or desire and, instead, is based on a unilateral hope. He has no legitimate claim of entitlement to the wage rate and, therefore, he does not have a cognizable property interest in it. <u>See Michigan Paytel Joint Venture</u>, 287 F.3d at 539; <u>Newsom</u>, 888 F.2d at 374.[4]

_____

[4]Defendants also briefly argue that, even if the court determines that plaintiff had a property interest in being paid at a particular rate, there was no constitutional violation because plaintiff received the process he was due. In support of that argument, defendants cite to testimony by Malone that she informed plaintiff that his wages were being reduced and plaintiff was given a chance to argue his case before her prior to the actual reduction in wages. (Deposition of Montina Malone, p. 38, attached as Exhibit 3 to Defendants' Motion for Summary Judgment) However, plaintiff testified that he was not told his pay had been reduced

**2. Clearly Established Right**

Defendants also argue that they are entitled to qualified immunity because, even if the Court does find that plaintiff did have a right to a hearing prior to his wages being reduced, the law was not sufficiently clear in 2005 that inmates were entitled to a hearing prior to their wages being reduced. As discussed above, if a constitutional violation can be shown, a court ruling on the issue of qualified immunity must then ask whether that constitutional right was clearly established and, if it was not, the defendant is still entitled to qualified immunity. Saucier, 533 U.S. at 201. Moreover, the inquiry into whether a right is clearly established " must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

Given that this court found above that plaintiff's right to procedural due process was not violated, it likewise finds that plaintiff's right was not clearly established in the specific context of this case. While plaintiff clearly has a general right to procedural due process, nothing

---

until June of 2005, more than a month after it happened, and that he learned of the pay reduction from a maintenance supervisor rather than Malone. (Deposition of Plaintiff, p. 32, attached as Exhibit D to Plaintiff's Response to Defendant's Motion for Summary Judgment) Plaintiff also testified that he did not speak with Malone until after he filed his step one grievance. (Deposition of Plaintiff, p. 34, attached as Exhibit D to Plaintiff's Response to Defendant's Motion for Summary Judgment) Viewing that evidence in a light most favorable to plaintiff, as the court must, a genuine issue exists with respect to the process plaintiff was given and a rational trier of fact could find that, assuming plaintiff was entitled to due process, plaintiff's right to procedural due process was denied. Consequently, if plaintiff is found to have been entitled to due process prior to his wages being reduced, defendants should not be granted summary judgment on the basis that plaintiff was given all the process he was due. Matsushita, 475 U.S. at 587; Fed. R. Civ. P. 56(c).

suggests that any due process right with respect to prison wages was clearly established at the time plaintiff's wages were reduced. Instead, the extensive analysis necessary to determine whether plaintiff's constitutional rights were violated in this case suggests that any such right was not clearly established. Plaintiff fails to address this issue in his brief.

### B. Personal Involvement of Jackson, Booker and Banks

Defendants also argue that Jackson, Booker and Banks are entitled to summary judgment because plaintiff merely alleges a respondeat superior theory of liability against them. A respondeat superior theory of liability, based on the right to control employees, is not cognizable under 42 U.S.C. § 1983. See Turner v. City of Taylor, 412 F.3d 629, 649 (6th Cir. 2005); Hays v. Jefferson County, Ky., 668 F.2d 869, 874 (6th Cir.1982). "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (citations omitted).

Plaintiff argues in response that he does not base his claims against Jackson, Booker and Banks on a respondeat superior theory of liability and, instead, his claims are based on their personal involvement in the violation of his constitutional right to due process. To succeed in under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation. Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam). The claims against each of the three defendants will be examined in turn.

### 1. Jackson

According to plaintiff, while Jackson did not make the initial determination to cut Pickelhaupt's pay, he was directly involved in upholding the Classification Director's decision given that he personally responded to plaintiff's step two grievance, and after reviewing it, denied plaintiff's request to be returned to his previous pay rate.  (Deposition of Andrew Jackson, p. 9, attached as Exhibit I to Plaintiff's Response to Defendants' Motion for Summary Judgment; MDOC Step II Grievance Appeal Response, attached as Exhibit K to Plaintiff's Response to Defendants' Motion for Summary Judgment)  However, the Sixth Circuit held in Shehee v. Luttrell, that a denial of an administrative grievance and the failure to remedy the alleged constitutional violation did not constitute sufficient involvement to establish liability under 42 U.S.C. § 1983.  Shehee, 199 F.3d at 300.  Other than the grievance response, Jackson did not have any involvement with plaintiff and, therefore, he is entitled to summary judgment on the basis that he was not personally involved in the alleged constitutional violation.

### 2. Booker

In this case, defendants submitted evidence that plaintiff never spoke with Booker about the issue of his pay cut.  (Deposition of Plaintiff, pp. 41, 45, attached as Exhibit 4 to Defendants' Motion for Summary Judgment).  Defendants also assert that Booker was not the Warden at MCF at the time of his pay cut, but they fail to support that statement with any evidence.   In response, plaintiff argues that "[a]t the time of the alleged constitutional violation, Raymond Booker was the Deputy Warden at Mound. On information and belief, Warden Booker was involved in upholding [plaintiff's] pay decrease, and, thus, can be held liable pursuant to 42 USC

§ 1983 and Pickelhaupt is confident that this fact can be established at trial." (Plaintiff's Brief Response to Defendants' Motion for Summary Judgment, pp. 12-13)

While defendants failed to support their assertion that Booker did not even become the Warden at NRF until 2006, they did provide evidence that plaintiff admitted he never spoke with Booker about his pay issue. Such evidence appears to meet defendants' initial burden of demonstrating the absence of a genuine issue as to his personal involvement in the alleged constitutional violation. Moreover, once defendants carried that burden, plaintiff must come forward with specific facts showing that there is a genuine issue for trial and he cannot merely rest upon the allegations contained in his pleadings. Matsushita, 475 U.S. at 587; Banks, 330 F.3d at 892. However, resting on the allegations contained in his pleadings is exactly what plaintiff did with respect to his claim against Booker. He completely failed to submit any evidence demonstrating that material issues of fact exists and, therefore, Booker is entitled to summary judgment on the basis of his lack of personal involvement. Banks, 330 F.3d at 892; Fed. R. Civ. P. 56(e).

### 3. Banks

In her deposition testimony, Banks stated that she does not play a specific role in setting inmates' wages, she did not make the decision to reclassify plaintiff and she never spoke with plaintiff personally. (Deposition of Constance Banks, pp. 13-14, 21, attached as Exhibit 7 to Defendants' Motion for Summary Judgment). In response, plaintiff submitted evidence that Banks is currently the principal of academic and vocational programs for the Mound

and Ryan correctional facilities (Deposition of Constance Banks, p. 4, attached as Exhibit J to Plaintiff's Response to Defendants' Motion for Summary Judgment) and that, pursuant to MDOC Operating Procedures, the principal is part of the Program Classification Committee (MDOC Operating Procedure, Program Classification, p. 1, attached as Exhibit H to Plaintiff's Response to Defendants' Motion for Summary Judgment). Plaintiff also submitted evidence that, during the audit of plaintiff's pay, the classification person came to Banks and asked her to verify plaintiff's certification. (Deposition of Constance Banks, p. 6, attached as Exhibit J to Plaintiff's Response to Defendants' Motion for Summary Judgment) Banks testified that although she thought that the certificate was valid, "the job description based on the policy did not coincide," with plaintiff's job. (Deposition of Constance Banks, p. 6, attached as Exhibit J to Plaintiff's Response to Defendants' Motion for Summary Judgment)

Viewing that evidence in a light most favorable to plaintiff, as the court must, a genuine issue exists with respect to role Banks played in the alleged constitutional violation and a rational trier of fact could find that Banks was personally involved in the decision to reduce plaintiff's pay. As discussed above, Banks admitted that the classification director came to her during an audit of plaintiff's pay and that she found that, although plaintiff's certificate was valid, plaintiff's actual job did not coincide with the job description provided by MDOC policy. While it is unclear what effect, if any, Banks' determination played in reducing plaintiff's pay, viewing the evidence in a light most favorable to plaintiff, a rational trier of fact could conclude that she was personally involved in the alleged constitutional violation and, therefore, Banks is not entitled to summary judgment on that basis.

### C. Exhaustion of Administrative Remedies

Booker also argues that he is entitled to summary judgment because plaintiff failed to exhaust his administrative remedies with respect to his claim against Booker prior to filing this lawsuit.  As discussed below, while Booker's argument is not prohibited by the law of the case doctrine, plaintiff should still be deemed to have exhausted his administrative remedies with respect to Booker.

#### 1. Law of the Case Doctrine

As a preliminary matter, plaintiff argues that Booker's argument is prohibited by the "law of the case doctrine."  "Under the doctrine of the law of the case, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation." Klemencic v. Ohio State University, 263 F.3d 504, 511-512 (6th Cir. 2001) quoting United States v. Moored, 38 F.3d 1419, 1421 (6th Cir. 1994).  In this case, at a time when Jackson was the sole defendant, Magistrate Judge Morgan recommended that Jackson's motion to dismiss be denied because the purpose of the exhaustion requirement had been satisfied given that a review of the pleadings indicated that this action was, in essence, an action against the facility itself and plaintiff had fully notified officials at the Mound facility of his complaint regarding his reduction in pay (D/E #15).  On December 4, 2006, Judge Tarnow issued an order adopting Magistrate Judge Morgan's report and recommendation, while also granting plaintiff leave to file an amended complaint after he obtains counsel (D/E #19).

Subsequent to the earlier finding on exhaustion of administrative remedies, plaintiff amended his complaint and added additional parties, including Booker (D/E #31).  Given that the

claim against Booker was not a part of the case at the time of the previous exhaustion ruling, no court has ever ruled on whether plaintiff exhausted his administrative remedies with respect to his claim against Booker.  A situation can occur where only some of a plaintiff's claims are exhausted and each claim must be examined individually.  See Jones, 127 S.Ct. at 923-926 (finding that prison inmate's compliance with Prison Litigation Reform Act's (PLRA) administrative exhaustion requirement as to some, but not all, claims brought in civil rights action does not warrant dismissal of entire action; rather, court should proceed with exhausted claims.") Furthermore, this Court's previous ruling was based, in part, on the fact that it did not appear from plaintiff's complaint that he is seeking to hold Jackson personally liable for any wrongdoing (D/E #15, p. 5), while plaintiff's amended complaint purports to be against defendants in their individual capacities as well as their official capacities (D/E #31).

Given that the exhaustion of remedies with respect to the claim against Booker was not addressed in the previous ruling, as well as the fact that plaintiff now alleges that defendants are personally liable for the constitutional violation, Booker's argument is not barred by the law of the case doctrine.

### 2. Booker

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e et seq., "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Accordingly, exhaustion of available administrative

remedies is mandatory in order for prisoners to bring a claim in federal court.  Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 914 (2007); Woodford v. Ngo, __ U.S. __, __, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006).  Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules."  Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").

Section 1997e does not impose a jurisdictional bar to federal jurisdiction, Curry v. Scott, 249 F.3d 493, 501 -503 (6th Cir. 2001), and while the preferred practice is for inmates to complete the grievance process prior to the filing of an action, "because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute."  Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999).  .  In Wyatt, for example, the Sixth Circuit found that the plaintiff had substantially complied with the exhaustion requirement by making a good faith attempt to reach the appropriate prison official and the case was allowed to proceed despite the plaintiff's failure to properly exhaust his administrative remedies.  Wyatt, 193 F.3d at 880.  The Sixth Circuit has also concluded that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance. Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004).

In this case, Booker argues that plaintiff failed to properly exhaust his administrative remedies with respect to his claim against Booker because Booker was not named in the

grievance filed by plaintiff. MDOC Policy Directive (PD) 03.02.130, ¶ T (effective December 19, 2003) reads "Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where why, and how). Dates, times, places and names of all those involved in the issue being grieved are to be included." (MDOC PD 03.02.130, attached as Exhibit 8 to Defendants' Motion for Summary Judgment)

Booker correctly notes that he was not named in the grievance filed by plaintiff.[5] However, while plaintiff has amended his complaint and the law of the case doctrine does not apply, the same reasoning this court used finding that plaintiff had exhausted his administrative remedies as to Jackson applies here:

> Plaintiff clearly laid out his complaint in his Step I grievance, and in his subsequent grievance appeals. He thereby gave prison officials full and fair notice of the nature of his grievance and an opportunity to respond. Whether the Classification Director, Warden Jackson, or some other official was responsible for the pay reduction would be of little relevance to the investigation of plaintiff's grievance – either he was entitled to $ 3.34 per hour under MDOC policy or he was not. Plaintiff provided prison officials sufficient information to investigate the claim, and his naming of, or failure to name, any particular individual did not in any way interfere with the ability of corrections officials to conduct an investigation. Thus, plaintiff's Step I grievance comported with the purpose of exhaustion requirement, notwithstanding his failure to identify in the grievance the individual against whom he has brought suit. [D/E #15, p. 4-5]

Moreover, to the extent Booker argues that the grievance procedure failed to provide him with notice of plaintiff's claim, the Sixth Circuit has noted that, while the grievance procedure

---

[5]Plaintiff's Step I grievance and his subsequent appeals are attached as part of plaintiff's original complaint (D/E #1, pp. 5-10).

may promote early notice to those who might later be sued, that has not been thought to be one of the leading purposes of the exhaustion requirement.  Jones, 127 S.Ct. at 923, citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2006) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation").  The Sixth Circuit has identified the benefits of exhaustion to include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."  Jones, 127 S.Ct. at 923.

### D. Promissory Estoppel Claim

#### 1. Supplemental Jurisdiction

28 U.S.C. § 1367(c)(3) provides that the district courts may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction."  While the court has discretion in exercising supplemental jurisdiction, ordinarily, where all federal claims have been dismissed, federal courts should decline to exercise supplemental jurisdiction over state law claims.  See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ( "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").  The decision whether to exercise supplemental jurisdiction "depends on 'judicial economy, convenience, fairness, and comity.'"  Musson Theatrical, Inc. v.

Fed. Express Corp., 89 F.3d 1244, 1254 (6th Cir. 1996) quoting Carnegie-Mellon Univ. v.

Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

In this case, plaintiff has both a federal claim and a state claim.  As discussed above, this

court recommends that plaintiff's federal claim be dismissed.  Plaintiff requests that the court

continue to exercise supplemental jurisdiction over his state law claim even if his federal claim is

dismissed in order to foster judicial economy, prevent duplicative litigation in state court and

because in essence both claims arise from the same nucleus of operative fact.  However, plaintiff

fails to articulate how those purposes would be served by the court exercising supplemental

jurisdiction and plaintiff ignores factors such as comity and fairness.  As discussed above, where

all federal claims have been dismissed, federal courts should ordinarily decline to exercise

supplemental jurisdiction over state law claims.  See United Mine Workers of Am, 383 U.S. at

726.  There does not appear to be any extraordinary circumstances justifying a departure from

that general rule in this case and, if the court dismisses plaintiff's 42 U.S.C. § 1983 claim, the

sole claim over which it had original jurisdiction, it should also dismiss plaintiff's state law

promissory estoppel claim pursuant to 28 U.S.C. § 1367(c)(3).

**2. Merits of Plaintiff's Promissory Estoppel Claim**

If the court addresses plaintiff's promissory estoppel claim, it should grant summary

judgment in favor of defendants.  The elements of a claim of promissory estoppel are: (1) a

promise; (2) that the promisor should reasonably have expected to induce action of a definite and

substantial character on the part of the promisee; (3) which in fact produced reliance or

forbearance of that nature; and (4) in circumstances such that the promise must be enforced if

injustice is to be avoided.  Booker v. City of Detroit, 251 Mich.App 167, 174; (2002) rev'd in part on other grounds, 469 Mich. 892 (2003); Marrera v. McDonnell Douglas Capital Corp., 200 Mich.App 438, 442 (1993). The promise must be definite and clear and the reliance on it must be reasonable.  Ypsilanti Twp v. Gen. Motors Corp., 201 Mich.App 128, 134, 139 (1993).  Courts should cautiously evaluate an estoppel claim and apply the doctrine only if "the facts are unquestionable and the wrong to be prevented undoubted."  Novak v. Nationwide Mutual Ins. Co., 235 Mich.App 675, 687 (1999).

To establish a claim of promissory estoppel in this case, then, plaintiff must establish that he reasonably relied on a "clear and definite promise" made by Roby regarding plaintiff's wages. As discussed above, however, "[p]ublic officers have and can exercise only such powers as are conferred on them by law, and a State is not bound by contracts made in its behalf by its officers or agents without previous authority conferred by statute or the Constitution."  Sittler v. Bd of Control, 333 Mich. 681, 687 (1952).  "Nor is a State bound by an implied contract made by a State officer where such officer had no authority to make an express one" and "[t]he powers of State officers being fixed by law, all persons dealing with such officers are charged with knowledge of the extent of their authority or power to bind the State, and are bound, at their peril, to ascertain whether the contemplated contract is within the power conferred."  Sittler, 333 Mich. at 687.

In this case, as discussed above, plaintiff argues that Roby had the authority to enter into an agreement granting plaintiff a certain wage in exchange for plaintiff forgoing hazard pay, but he fails to provide any support for that position.  Such authority is not found in the duties given

to Classification Directors in the MDOC Operating Procedure attached to plaintiff's response ((MDOC Operating Procedure, Program Classification, p. 4, attached as Exhibit H to Plaintiff's Response to Defendants' Motion for Summary Judgment)  Roby appears to have no statutory or constitutional authority to bind the State to pay plaintiff a certain wage and, pursuant to <u>Sittler</u>, plaintiff is charged with the knowledge that Roby could not enter into any contract for the State. <u>Sittler</u>, 333 Mich. at 687.   Given Roby's lack of authority and plaintiff's knowledge of it, plaintiff cannot establish that he reasonably relied on a clear and definite promise made by Roby regarding plaintiff's wages and, therefore, defendants would be entitled to summary judgment on plaintiff's promissory estoppel claim.

## V. Conclusion

For the reasons discussed above, the court recommends that defendants' motion for summary judgment be **GRANTED.**  All remaining defendants are entitled to summary judgment and qualified immunity on plaintiff's 42 U.S.C. § 1983 claim because no genuine issue exists with respect to whether a constitutional violation occurred.  Jackson and Booker are also entitled to summary judgment because they were not personally involved in the alleged constitutional violation.  Additionally, given that plaintiff's sole federal claim should be dismissed, this Court recommends that plaintiff's state law claim be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140

(1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

<u>s/Virginia M. Morgan</u>
Virginia M. Morgan
United States Magistrate Judge

Dated: July 22, 2008

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on July 22, 2008.

<u>s/Jane Johnson</u>
Case Manager to
Magistrate Judge Virginia M. Morgan